**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Desiree Madison,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-24-02421-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 10) and the Commissioner's answering brief (Doc. 17), as well as the Administrative Record (Docs. 8-9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.    <u>Procedural History</u>

Plaintiff filed an application for Title II disability and disability insurance benefits ("DIB") on March 3, 2021, eventually alleging a disability onset date of February 1, 2023. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On January 17, 2024, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-25.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.    <u>The Sequential Evaluation Process and Judicial Review</u>

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.  The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work

activity since the alleged amended onset date and that Plaintiff had the following severe impairments: "lumbago and degenerative changes of the cervical spine, anxiety, depression/bi-polar, post-traumatic stress disorder (PTSD) and personality disorder." (AR at 17-18.)[1]

Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 18-20.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should never climb ropes, ladders or scaffolds. She could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to unprotected heights and moving and dangerous machinery. She was able to understand, remember, and carry out simple instructions and tasks. She could respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was no more than occasional. She should not work in a setting with constant/regular contact with the general public or more than occasional handling of customer complaints.

(*Id.* at 20.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 23.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. Rubin, state agency reviewing physician ("persuasive"); (2) Dr. Meier, state agency reviewing physician ("persuasive"); (3) Dr. Mallik, state agency reviewing physician ("persuasive"); and (4) Dr. Kuge, state agency reviewing physician ("persuasive"). (*Id.* at 22-23.) The ALJ clarified that "[w]hile the undersigned has not adopted these opinions verbatim, the limitation to a range of light work that was simple, unskilled and limited her social interactions was generally consistent with the restrictions

---

[1] The ALJ also determined that Plaintiff had the non-severe impairments of "refractive visual error; history of hematuria; indigestion; fatty liver; remote history of hepatitis C; osteoporosis; idiopathic neuropathy; menopause." (AR at 18.)

- 3 -

determined herein." (*Id.* at 22.) The ALJ also "considered two third party function reports, submitted by the claimant's daughter," but deemed them "minimally persuasive." (*Id.* at 23.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was unable to perform her past relevant work as a medical assistant, she was capable of performing three jobs that exist in significant numbers in the national economy: "[1] 'marker' (DOT# 209.587-034) with over 136,000 jobs in the U.S., [2] 'housekeeper/cleaner' (DOT# 323.687-014) with over 177,000 jobs in the U.S. and [3] 'router' (DOT# 222.587-038) with over 25,000 jobs in the U.S. These jobs are unskilled, SVP2." (*Id.* at 23-24.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 24-25.)

IV. Discussion

    A. **Whether Plaintiff Was "Automatically" Entitled To DIB Benefits Based On The Earlier Award Of SSI Benefits**

        1. The Parties' Arguments

Plaintiff's first assignment of error is that "[t]he Commissioner erred in finding Plaintiff not disabled under Title II ('DIB'), while already finding her disabled under Title XVI ('SSI') of the Social Security." (Doc. 10 at 3-9.) The gravamen of this argument is that because "the medical standards for disability are the same in both DIB and SSI programs for individuals age 18 or older," Plaintiff successfully applied for SSI benefits in 2001, and Plaintiff "has continued to receive SSI benefits since the claim of 2001 except for periods of time wherein she earned wages under the Commissioner's Ticket-To-Work program," "[t]he ongoing receipt of SSI benefits under Title XVI evidences that [Plaintiff] always met the medical criteria for disability, yet the agency has treated her DIB or Title II claims differently in error." (*Id.* at 3-5.) Plaintiff elaborates: "[T]he issue of [Plaintiff's] disability was previously determined, and she is disabled. Despite having satisfied the medical determination of disability for SSI, the Commissioner treated [Plaintiff's] DIB claim differently for unknown reasons. Plaintiff is and has been disabled for several years,

but the DIB claim was processed as though no prior favorable decision had been made. When Plaintiff acquired sufficient DIB coverage, she should have automatically been awarded DIB benefits." (*Id.* at 8.)

The Commissioner responds that the ALJ permissibly "found that Plaintiff was not disabled, and that therefore the 2001 determination was wrong." (Doc. 17.) The Commissioner contends the ALJ was entitled to reach this determination under 20 C.F.R. § 404.950(f), which allows an ALJ to disregard an earlier determination of disability if "there are reasons to believe that it was wrong." (*Id.*) The Commissioner contends this standard was satisfied here because, as noted by the state agency reviewer, the SSA adopted "mental listing changes" in 2017 and "Plaintiff's impairments no longer met the updated mental Listing." (*Id.* at 3-5, citing AR at 74-76.) The Commissioner also emphasizes that by 2021, Plaintiff had "spent several years working," which is further evidence she is not disabled. (*Id.* at 4.)

Plaintiff did not file a reply.

2. <u>Analysis</u>

Under the SSA regulations, if "a fact . . . has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act," "the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision *unless there are reasons to believe that it was wrong*." 20 C.F.R. § 404.950(f) (emphasis added). Thus, even assuming the finding of disability in Plaintiff's earlier SSI proceeding constitutes a factual determination that was presumptively entitled to preclusive effect in this DIB proceeding, that presumption could be overcome if the ALJ identified "reasons to believe" the earlier determination "was wrong." *See, e.g., Terry M. v. Kijakazi*, 2023 WL 5035414, *7-9 (D. Nev. 2023) ("[T]he ALJ found that the SSI decision was wrong and sufficiently articulated his reasons for that finding. . . . [T]here is no error in the ALJ's finding that collateral estoppel did not apply to T.M.'s DIB application."); *Russell C. v. Saul*, 2021 WL 130025, *6-7 (S.D. Cal. 2021) (finding "no error in the ALJ's finding that

collateral estoppel does not apply to the Title II application" where "[e]ven assuming *arguendo* that the SSI decision is a 'prior determination or decision,' the ALJ explained why the SSI decision was wrong: Plaintiff's post-onset work activity at Interfaith constituted substantial gainful activity"). The ALJ did just that—the ALJ deemed "persuasive" the opinions of Dr. Rubin (AR at 22), and one of Dr. Rubin's opinions was: "Cannot [apply] collateral estoppel d/t [due to] mental listing changes 03/2017." (AR at 74.) Accordingly, to the extent Plaintiff challenges the ALJ's failure to "automatically" award DIB benefits to her based on the earlier award of SSI benefits (Doc. 10 at 8), the Court finds no error in that approach.

      B.      **Whether The ALJ Committed Harmful Error By Failing To Incorporate, In The RFC, Certain Limitations Identified By Dr. Rubin**

            1.      The Parties' Arguments

Plaintiff's final assignment of error is: "The ALJ erred when evaluating the full extent of limitations caused by Plaintiff's severe mental impairments. The RFC fails to account for [Plaintiff's] diminished mental capacity to understand, remember, and carry out no more than 1-2 step instructions and tasks as supported by the medical opinion evidence found persuasive by the ALJ. The ALJ also erred by failing to incorporate Plaintiff's restriction to superficial interaction with others." (Doc. 10 at 9.) The foundation for this argument is the ALJ's determination that the opinions of Dr. Rubin were "persuasive." (*Id.* at 9-11.) First, Plaintiff notes that Dr. Rubin found she is "profoundly restricted in her ability to understand, remember, and apply information, as well as in her capacity to maintain concentration, persistence" and would be limited to "carrying out no more than 1-2 step instructions, and 1-2 step tasks." (*Id.* at 10-11.) Plaintiff argues that because the ALJ deemed Dr. Rubin's opinions persuasive, the ALJ was required to incorporate all of these limitations into the RFC, yet the ALJ failed to do so: "The ALJ offered no explanation why the 1-2 step instructions and tasks restrictions were excluded from the RFC, including how any evidence of record contradicted Dr. Rubin. To the contrary, the ALJ took no issue with the supportability of Dr. Rubin's opinion, and even

- 6 -

held that his conclusion was 'supported by the medical evidence of record.'" (*Id.* at 12. *See also id.* at 14 ["Dr. Rubin's assessment that Plaintiff is limited to 1-2 step task instructions and tasks was unchallenged by the ALJ, and the ALJ's failure to include these limitations as part of the RFC was improper."].) Plaintiff further contends this error was not harmless because "the jobs found suitable by the ALJ . . . require more than one and two-step instructions and tasks." (*Id.* at 14.) Second, in a similar vein, Plaintiff notes that Dr. Rubin also opined that she would be restricted to no more than "superficial" and "occasional" interaction with others; argues that the ALJ was therefore required to incorporate both of these social interaction limitations into the RFC; and argues that the ALJ's failure to do so was not harmless because such limitations would "contradict[] the demands of all the jobs found suitable by the ALJ when considering Plaintiff's diminished capacity to understand, remember, and carry out instructions." (*Id.* at 17-22.) Plaintiff concludes that, in light of these errors, reversal is warranted under *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023). (*Id.* at 22-23.)

In response, the Commissioner seemingly does not dispute that the ALJ was required to include, in the RFC, Dr. Rubin's opined-to limitations to one- or two-step instructions and one- or two-step tasks. (Doc. 17 at 5-6.) Instead, the Commissioner contends the omission of those limitations from the RFC was harmless because one of the jobs identified by the VE was housekeeping cleaner and "a restriction to one- to two-step tasks would not preclude work as a housekeeping cleaner. The housekeeping cleaner position has a reasoning level of one." (*Id.*) As for the ALJ's purported failure to include, in the RFC, both of Dr. Rubin's opined-to social interaction limitations, the Commissioner contends that "the ALJ's translation of Dr. Rubin's limitations rationally included both the quantitative and qualitative restrictions" and that "[t]he ALJ reasonably translated superficial contact as a limitation to working in a task-oriented setting." (*Id.* at 6-7.) Alternatively, the Commissioner contends that "[e]ven if the Court were to find this was not a rational translation, the Ninth Circuit has held that there is no obvious inconsistency between a doctor's opinion that an individual could relate to others on a superficial work

basis and a [RFC] finding the claimant was capable of occasional interaction with coworkers. And while Plaintiff correctly notes that the housekeeping cleaner position is required to render personal assistance to patrons, the Ninth Circuit has found that this job's occasional interaction with hotel guests does not amount to more than minimal or superficial contact with the public." (*Id.* at 7, cleaned up.) The Commissioner concludes: "It is clear from the record that the housekeeping cleaner job does not require more than one- to two-step tasks. Moreover, the Ninth Circuit has found that this job does not require more than superficial interaction with others. Under *Leach*, these errors are inconsequential and do not require remand." (*Id.* at 7-8, cleaned up.)

As noted, Plaintiff did not file a reply.

### 2. Analysis

One of the positions identified by the VE was housekeeping cleaner, and Plaintiff does not challenge the ALJ's determination that this position, alone, exists in significant numbers in the national economy. (AR at 24 ["The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as . . . 'housekeeper/cleaner' (DOT# 323.687-014) with over 177,000 jobs in the U.S. . . ."].)

As Plaintiff acknowledges, the position of housekeeping cleaner only "requires Reasoning Level One." (Doc. 10 at 21.)[2] Although Plaintiff contends this position nevertheless "requires greater than one or two steps" (Doc. 10 at 15), the Ninth Circuit has rejected this contention and concluded that jobs requiring Reasoning Level One may be performed by a claimant who is limited to one- or two-step tasks and instructions. *See, e.g., Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) ("A finding that Davis had the [RFC] to do only one- or two-step tasks would require the ALJ to find her able to perform jobs requiring no more than Reasoning Level 1."); *Keifer v. Saul*, 789 F. App'x 581, 582 (9th Cir. 2020) ("The ALJ found Keifer's [RFC] limited her to jobs involving one- to two-

---

[2] *See also* Cleaner, Housekeeping, *Dictionary of Occupational Titles* (DOT) 323.687-014, 1991 WL 672783 ("Reasoning: Level 1 - Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.").

step instructions, meaning she was limited to DOT Reasoning Level 1 jobs."); *Bordbar v. Astrue*, 475 F. App'x 214, 215 (9th Cir. 2012) ("[T]he ALJ described someone limited to 'one to two-step simple instruction kinds of jobs,' which parallels the language used to describe jobs at Reasoning Level One . . . .").

Given this backdrop, even assuming the ALJ erred by failing include, in the RFC, Dr. Rubin's opined-to limitations to one- or two-step tasks and instructions, that error was harmless. *See, e.g., Dakota L. v. King*, 2025 WL 806381, *1 (C.D. Cal. 2025) ("Plaintiff argues that the ALJ erred when he failed to include in the RFC a mental limitation to simple one- to two-step tasks as recommended by the consultative examining psychologist and the State Agency medical consultants. Even if the ALJ erred by failing to include that limitation, any error was harmless. A limitation to one- and two-step tasks would preclude two of the occupations identified by the ALJ at step five as examples of work Plaintiff could perform: marker and router . . . [because] those jobs require Reasoning Level 2. And the Ninth Circuit has held that a Reasoning Level 2 occupation requires more than one- to two-step tasking. But the third position identified by the ALJ at step five was [housekeeping cleaner], which requires only Reasoning Level 1. Reasoning Level 1 is consistent with a limitation to one- and two-step tasks, and the vocational expert testified that a person with this restriction could perform the job of cleaner."); *Rebecca R. v. Comm'r, Soc. Sec. Admin.*, 2025 WL 372096, *2-3 (D. Or. 2025) (where one of the jobs identified at step five was "housekeeping cleaner," any error in failing to incorporate all of a medical source's opined-to limitations in the RFC "was harmless because the ALJ identified sufficient reasoning level one jobs that fit plaintiff's RFC"); *Ariceli D. H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 5321068, *3-4 (D. Or. 2023) ("[T]he ALJ erred when he found Dr. Mohney's medical opinion persuasive that limited Plaintiff to one and two step tasks, but then implicitly rejected or ignored that opinion when he created an RFC that limited her only to simple, repetitive, and routine tasks, without explanation. The next issue is whether such error was harmless. . . . [A]lthough each job cited by the VE at step five required Level Two reasoning, the ALJ first found that Plaintiff could do her past

relevant work of housekeeping cleaner at step four. Housekeeping cleaner requires Level One reasoning. . . . This Level One reasoning is consistent with Dr. Mahoney's recommendation of '1 & 2 step tasks.' Therefore, even if the ALJ had included the limitation in the RFC, the Commissioner still would have met its burden because the ALJ found that Plaintiff could perform her past relevant work of housekeeping at step four, which is a job that requires Level One reasoning."). *Cf. Keifer*, 789 F. App'x at 582 ("The ALJ found Keifer's [RFC] limited her to jobs involving one- to two-step instructions, meaning she was limited to DOT Reasoning Level 1 jobs. The VE testified that Keifer could have worked as an eye-dropper assembler (Reasoning Level 2), a stuffer (Reasoning Level 2), or a final assembler (Reasoning Level 1). Relying on the VE's testimony, the ALJ found Keifer could have worked in any of these three occupations, even though the occupations of eye-dropper assembler and stuffer require Level 2 Reasoning. Although the ALJ did not resolve this conflict between the VE's testimony and the DOT, we conclude any error was harmless. The VE's testimony was consistent with the DOT with respect to the occupation of final assembler, and the ALJ found there were a significant number of final assembler jobs—108,750 in the national economy—for which Keifer was qualified."). *Leach* does not require a different result. *Leach*, 70 F.4th at 1255 (even when "an ALJ inaccurately summarizes a claimant's limitations," reversal is not warranted if "the error was inconsequential").

This leaves the ALJ's purported failure to include, in the RFC, both of the social interaction limitations to which Dr. Rubin opined. Once again, the Court agrees with the Commissioner that any error was harmless. Even assuming, as Plaintiff contends (Doc. 10 at 17), that the ALJ should have interpreted Dr. Rubin's opinion as limiting Plaintiff to no more than "superficial" *and* "occasional" interaction with others (rather than only to "occasional" interaction), the Ninth Circuit has held that "a hotel housekeeper's occasional interaction with hotel guests does not amount to more than minimal or superficial contact with the public." *Young v. Colvin*, 610 F. App'x 615, 616 (9th Cir. 2015). *See also Cranor v. Kijakazi*, 2022 WL 14936052, *3 (9th Cir. 2022) (concluding that "substantial evidence

supports the ALJ's findings" where the ALJ found that the claimant had "the 'nonexertional limitations' of only "occasional superficial interaction with the general public" and "made a step-five finding that Cranor could work as a housekeeping cleaner"); *Hulsey v. Astrue*, 622 F.3d 917, 925 (10th Cir. 2010) (where "[t]he ALJ's hypothetical . . . limited Hulsey to 'work of an unskilled nature involving only superficial interpersonal contact,'" "[t]he requirements for the 'cleaner, housekeeping' position are not incompatible with the impairments described in the ALJ's most recent hypothetical").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 22nd day of September, 2025.

Dominic W. Lanza
United States District Judge

- 11 -